UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Marquel Lawton, | ) | Civil Action No.  5:20-03931-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| Kilolo Kijakazi,[1] Acting Commissioner | ) | |
| of the Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local

Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's

petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain

judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying

his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")

pursuant to the Social Security Act ("the Act"). The issues before the court are whether the decision

is supported by substantial evidence and whether the Commissioner's decision contains an error

of law. Having carefully considered the parties' submissions and the applicable law, the court

reverses and remands the Commissioner's decision for the reasons discussed herein.

I.      Relevant Background

        A.      Procedural History

        According to the record, Plaintiff applied for DIB on September 26, 2012 and SSI on

September 26, 2012. Tr. 207, 209.[2] Plaintiff initially alleged a disability onset date of June 30,

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the named defendant in this action.

[2] The record contains conflicting information about the dates of the applications. The index indicates that Plaintiff filed for DIB on September 26, 2012 and SSI on October 12, 2012. ECF No. 15-1. Within the ALJ's initial decision, the ALJ indicates Plaintiff filed for DIB on September

2012 but later amended the onset date to March 13, 2013. Tr. 238, Ex. 9D.[3] Plaintiff's applications

were denied initially on February 5, 2013, and upon reconsideration on August 15, 2013. Tr. 126-

128. His applications were considered at a hearing held on March 25, 2015. Tr. 31. On May 19,

2015, Plaintiff received an unfavorable decision from the ALJ. Tr. 10-30. On August 23, 2016, his

request for review was denied by the Appeals Council.  Tr. 1-3. After filing suit in the U.S. District

Court for the District of South Carolina, the district court remanded Plaintiff's case for further

proceedings on October 21, 2017. Tr. 530-560. Specifically, within the Report and

Recommendation, the court found that the ALJ committed error requiring remand for

reconsideration of the weight to be accorded treating-source evidence. Tr. 552.

On remand, the ALJ held a second hearing on March 20, 2019. Tr. 469-505. Plaintiff was

represented by counsel. Vocational expert Rebecca L. Bruce testified, as well. The ALJ issued a

decision on May 7, 2019, again denying Plaintiff's applications. Tr. 412-431. The Appeals Council

denied Plaintiff's request for review, and this lawsuit followed with the filing of the Complaint on

November 10, 2020. ECF No. 1.

B.    Plaintiff's Background

Plaintiff was born on August 31, 1987 and was 24 years old on his initial alleged onset date

of June 30, 2012, and 25 on his amended onset date of March 13, 2013. Tr. 207. He initially alleged

his medical conditions included asthma, brachial plexus neuritis, no use of his right arm, and spinal

pain. Tr. 264. Plaintiff completed his education through the twelfth grade in May of 2005. Tr. 267.

At a consultative examination, his grandmother indicated that Plaintiff was retained in the 6th and

---

11, 2012 and SSI on September 26, 2012. Tr. 13. Plaintiff's Brief states these as the respective
dates of filing, as well. Pl.'s Br. 1, ECF No. 22.
[3] At this hearing, Plaintiff confirmed that he amended the onset date from June 30, 2012 to March
13, 2013. Tr. 475.

9th grades. Tr. 380. Plaintiff reported that he lives with his family at home. Tr. 247. He reported that the onset of at least one of his conditions occurred when he was seven years old. Tr. 248. In the Work History Report, Plaintiff reports that in the past 15 years, he worked as a clerical assistant, a call technician representative, a cashier, and most recently, as a housekeeper and maintenance employee at a hotel. Tr. 239; 255. At the hearing in 2019, he reported that his last place of employment was the Red Roof Inn. Tr. 489.

In a subsequent Disability Appeal Report, he reported that since September 26, 2012, he has experienced spinal issues hindering his ability to sit, stand, or lie down for a long period of time. Tr. 271. He further reported that he was unable to use his right arm "at all" due to the brachial plexus abnormality. *Id.*

C.      Administrative Proceedings

Plaintiff appeared with counsel for an administrative hearing in Columbia, South Carolina before ALJ Ronald Fleming on March 20, 2019. Tr. 469-505. Plaintiff testified, along with VE Rebecca L. Bruce. Tr. 472. At the beginning of the hearing, the ALJ listed Plaintiff's impairments, to include asthma; brachial plexus injury to the right upper extremity; scoliosis; and degenerative disc disease of the lumbar spine; osteomalacia; thrombocytopenia; depression; history of rib fractures; tachycardia; anxiety, degenerative joint disease of the left knee; degenerative disc disease of the cervical spine with anterior cervical discectomy and fusion ("ACDF") at C4 and C5; and substance abuse. Tr. 476. Plaintiff's counsel added that in June of 2018, Plaintiff suffered from a compression fracture of the thoracic spine at T8, as well. *Id.*

1.   Plaintiff's Testimony

Plaintiff testified that as of the date of the hearing, he was 31 years old. Tr. 476. Plaintiff testified that he was predominately right-handed but had to learn to use his left hand after his right

hand became paralyzed. Tr. 477. Plaintiff testified he is single with two children who do not currently reside with him. *Id.* He had been living at his grandmother's house with his grandparents; however, he currently has been living from "place to place" after being kicked out by his grandfather. Tr. 476-477. Plaintiff testified that he does not currently have a source of income, and he receives food stamps. Tr. 477. Plaintiff testified that he drives every other day. Tr. 479. Plaintiff is able to read and write, but he not able to read on a "strong level." *Id*. Plaintiff has not worked anywhere since March 13, 2013; therefore, the ALJ determined he had no past relevant work. *Id.*

Plaintiff testified that he has been diagnosed with asthma, which he treats with inhalers and nebulizer treatments. Tr. 480. In response to questions from the ALJ regarding knee x-rays taken subsequent to his first hearing, Plaintiff testified that he has experienced pain and throbbing in his left knee. *Id.* at 481. Plaintiff testified the pain is usually at a 5-6 level on a 1-10 scale, and he takes pain medication to help with his symptoms. *Id.* Plaintiff testified that in June 2018, he had surgery at the C4-C5 level following an automobile accident. *Id.* at 482-83. As a result, Plaintiff testified that his neck will "tighten up" if in a certain position, and he experiences pain in his neck which he rated at a 6 or 7 on a 1-10 scale. *Id.* at 483. Plaintiff indicated that he was taking muscle relaxers, rather than pain medication, for his neck pain because the provider he currently sees is not able to provide pain medication. *Id.* at 484. When asked by the ALJ whether this provider is supervised by a doctor, Plaintiff testified that his provider was not supervised by a doctor, and that he had never been seen by a doctor in that office. *Id.* at 485.[4] At the hearing, Plaintiff indicated that he

---

[4] During this portion of the hearing, the ALJ asked Plaintiff's attorney if this was Nurse Lecuyer, whom Plaintiff had previously seen. Tr. 485. Plaintiff's attorney stated that he assumed it was the same provider. Tr. 485. Plaintiff's attorney later clarified that Plaintiff was receiving ongoing treatment from Dr. Nikki Keisler at a family practice office who he confirmed was a medical doctor. Tr. 489.

could not raise his right arm without using his left hand. *Id.* at 486. Plaintiff further testified that he has no functional use of his right arm. Tr. 489-490.

Plaintiff's attorney asked him about his last place of employment at the Red Roof Inn. Plaintiff testified that he obtained that position by speaking to someone there about any available jobs, and the individual at the Red Roof Inn offered him a position doing "light lenient work." Tr. 489. Plaintiff further testified that he was paired up with other people to accomplish the "heavy extreme work." *Id.* Plaintiff testified that this type of light work was similar to his previous place of employment, as well. *Id.* at 490. In discussing his impairments since the time of the previous decision in his case, Plaintiff testified that he began experiencing back pain and worsening of his back problems as he aged into adulthood, which he attributed to scoliosis. *Id.* at 491-92. Plaintiff further testified that throughout the years, he has spoken with several medical specialists regarding the option of amputating his right arm; however, Plaintiff stated that after discussing the procedure with his doctor and learning that it would be a difficult surgery based on the amputation site, he decided not to go forward with amputation. *Id.* at 492-93. Plaintiff also testified that his medical treatment has been hindered due to his lack of medical insurance, and his grandmother pays for his medical treatment out of pocket. *Id.* at 493. Plaintiff testified issues related to his healthcare have resulted in him experiencing depression. *Id.* at 493-44.

Plaintiff testified that the same injury to his right arm resulting from hypoxia from an asthma attack also caused memory or concentration problems throughout his life. *Id*. at 494. Specifically, Plaintiff testified that he has short-term memory issues, causing him to forget information or what people say to him. *Id*. at 494-95. Upon questioning by Plaintiff's counsel about his posture at the hearing in that he had his legs outstretched, Plaintiff explained that if he sits too long, he has to stand or lie down. *Id.* at 495.

### 2. VE's Testimony

The vocational expert, Ms. Rebecca L. Bruce, testified that, after reviewing Plaintiff's file regarding his work history, she did not find that he had any past relevant work ("PRW"). Tr. 500. The ALJ asked the VE to assume the following hypothetical: a person of Plaintiff's age, education, and past job experience who would be limited to sedentary work, with no use of his right upper extremity, who would be limited to frequent climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolds, frequently balancing and stooping, no kneeling, crouching, and the need to avoid concentrated exposure to heat, humidity, fumes, odors, dust, gases, and poor ventilation. *Id.* The VE testified that based on those limitations, the following jobs would be available: (1) Order Clerk, DOT No. 209.567-014, SVP 2, with a sedentary exertional level and 172,760 jobs in the national economy; (2) Charge Account Clerk, 205.367-014, SVP 2, with a sedentary exertional level and 102,606 jobs in the national economy; and (3) Surveillance Monitor, DOT No. 379.367-010, SVP 2, with a sedentary exertional level and 54,800 jobs in the national economy. Tr. 500-01. The VE testified that all of these jobs could be performed with just one functional arm and hand, which she based on her personal experience, including her prior work with one-handed people. *Id.* at 501. The ALJ then asked the VE to assume further that in addition to the prior limitations, the hypothetical individual would also be off task 20% of the workday. *Id.* at 501-02. The VE testified that there would not be work for this hypothetical person to perform. *Id*. at 502. Plaintiff's counsel also questioned the VE and asked what impact the use of one arm or hand would have on the ability to perform these jobs. *Id*. at 502. The VE responded "not really any" because as long as the job was sedentary, it could be done with one hand. *Id*. Plaintiff's counsel objected to the expert testimony as inconsistent with authorities, including 96-9p, that counsel said indicated that the use of one hand has a substantial impact on the occupational work base. *Id*.

II.    Discussion

   A.    The ALJ's Findings

In his May 7, 2019 decision, the ALJ made the following findings of fact and conclusions

of law:

> 1.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2015.
>
> 2.    The claimant has not engaged in substantial gainful activity since June 30, 2012, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq.*).
>
> 3.    The claimant has the following severe impairments: brachial plexus injury to right upper extremity, asthma, scoliosis and degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine with ACDF at C4-5, degenerative joint disease of the left knee (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except involving no use of the right upper extremity. Frequent climbing of ramps and stairs. No climbing of ladders, ropes or scaffolds. Frequent balancing and stooping. No kneeling, crouching or crawling. Avoid concentrated exposure to extreme heat, humidity, fumes, odors, dusts, gases and poor ventilation.
>
> 6.    The claimant has no past relevant work (20 CFR 404.1565 and 416.965).
>
> 7.    The claimant was born on August 31, 1987 and was 24 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of jobs skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from June 30, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).[5]

Tr. 417-425.

B.     Legal Framework

1.     The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner

---

[5] At this hearing, Plaintiff confirmed that he amended the onset date from June 30, 2012 to March 13, 2013. Tr. 475. However, in his decision, the ALJ referenced the prior onset date, June 30, 2012, as the relevant onset date. Plaintiff's counsel did not contest this date in his brief.

must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[6] (4) whether such impairment prevents claimant from performing past relevant work ("PRW"); and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he/she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing the inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence

---

[6] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step Three).

that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

### 2.   The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party. . .." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try [these cases] de novo, or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary

sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that the conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

    C.    Analysis

Plaintiff raises three arguments to support his request for remand: (1) the ALJ performed an improper RFC assessment; (2) the ALJ failed to comply with SSR 00-4p and SSR 96-9p; and (3) the ALJ failed to properly consider opinion evidence. Pl.'s Br., 20-29; ECF No. 22. In response, the Commissioner argues the ALJ's decision is supported by substantial evidence. Def.'s Br., 2; ECF No. 24. This court will discuss each argument in turn, consolidating the analyses of related arguments where appropriate.

    1.   The ALJ's RFC Assessment

Plaintiff first argues that the ALJ did not perform a proper function-by-function analysis in formulating Plaintiff's RFC. Specifically, he argues: (1) the ALJ improperly relied on VE testimony that did not adequately assess the impact of Plaintiff's inability to use his right upper extremity, and (2) the ALJ's RFC finding did not accommodate for either pain or mental impairments. The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff was not disabled. Def.'s Br. 11.

SSR 96-8p provides that an ALJ must include a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts, when supporting the RFC

assessment. In *Thomas v. Berryhill*, the Fourth Circuit outlined the proper RFC analysis, explaining that, "[t]he ALJ must consider all of claimant's 'physical and mental impairments, severe and otherwise, and determine on a function-by-function basis, how they affect [the claimant's] ability to work.'" 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)).

### a.   VE Testimony and the Analysis at Step Five

Plaintiff argues that the VE based her testimony about the cited jobs that a hypothetical individual with Plaintiff's RFC could perform, on her own personal experience. Pl.'s Br. 22. Plaintiff's counsel objected to the testimony and argued that SSR 96-9p provides that most unskilled sedentary jobs require bilateral manual dexterity. Pl.'s Br. 22-23. Plaintiff argues that because he did not have use of his dominant right arm, the logical conclusion is that the occupational base would be so significantly eroded that he should be found disabled without any further need for VE testimony. *Id.* Further, Plaintiff argues that his back, neck, and shoulder pain would hinder his ability to sit for extended periods, as required by sedentary work. *Id.* at 23.[7]

The Commissioner argues that the mere presence of medical impairments is insufficient to establish disability. Def.'s Br. 10. In a footnote, the Commissioner points out that Plaintiff raised a substantially similar argument regarding the analysis at Step Five in his prior appeal. Def.'s Br. 10, n. 5. In reviewing Plaintiff's prior appeal, Plaintiff argued that the ALJ's Step Five decision did not comply with SSR 00-4p. *See Lawton v. Commissioner*, 5:16-03499-DCN, ECF No. 21. In this appeal, Plaintiff again argues that the ALJ failed to comply with SSR 00-4p and SSR 96-9p because Plaintiff's ability to perform substantial work remains undetermined. Pl.'s Br. 26. Because

---

[7] Plaintiff makes a related argument that the Commissioner failed to show at Step Five that Plaintiff could perform other work. Pl.'s Br. 26. Because these two arguments are inter-related, this court will analyze both arguments together.

these arguments are interrelated insofar as the analysis for both arguments hinges upon the adequacy of considering Plaintiff's right upper extremity limitations, the court will address these arguments together.

SSR 96-9p discusses the disability determination when an individual's RFC is for less than a full range of sedentary work. SSR 96-9p specifies that "most unskilled sedentary jobs require good use of both hands and fingers." SSR 96-9p, 1996 WL 374185, at *8 (1996). Further, "[a]ny *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base." *Id.* (emphasis in original). However, SSR 96-9p does not explicitly provide that without the use of both upper extremities, there are no jobs that exist in the national economy for a claimant to perform. Here, in response to the ALJ's hypothetical, the VE provided 3 examples of jobs available in the national economy that the hypothetical individual could perform. Tr. 500-01. The VE stated that all of the jobs she cited could be performed with just one functional arm and hand. She based her response on her personal experience, including working with one-handed people before. Tr. 501. In response to Plaintiff's counsel's question about the impact of using only one arm or hand to perform activities on the jobs she listed, she responded that as far as impact, there would "not really [be] any. Because as long as they're sedentary, and you can do 'em with one hand. I can do them . . . and I don't have one hand." *Id.* at 502.

While SSR 96-9p indicates that a limitation to use both hands will result in a significant erosion to the unskilled sedentary occupational base, the ruling does not stand for the bright line rule that any individual without the use of both upper extremities is unable to perform any sedentary jobs. Indeed, the ruling itself indicates that most, but not all, unskilled sedentary jobs require good use of the hands and fingers. In response to what impact having the use of only one

arm or hand has on the specific jobs cited, the VE's testimony was that as long as the job is sedentary and can be done with one hand, there was not an impact on the job. At the hearing, the ALJ also indicated that this particular issue was previously addressed by the District Court. Tr. 503.

As to the specific issue of the VE's testimony, Plaintiff's argument is that neither the VE nor the ALJ acknowledged that the base of sedentary work was significantly impacted; however, that was not what Plaintiff's counsel asked the VE. The VE was testifying in response to a question about the particular jobs she listed as being able to be performed by the hypothetical individual, not the base of jobs as a whole. Therefore, while it is true that SSR 96-9p acknowledges a significant erosion to the base of sedentary work, it does not follow that the VE ignored that fact simply because she testified that in her personal experience, *as to the particular jobs identified*, they could be performed.

Relatedly, Plaintiff argues that the Commissioner did not meet the burden at Step Five of the sequential evaluation of showing that there are other jobs in significant numbers in the national economy the Plaintiff could perform. Specifically, Plaintiff argues that, pursuant to SSR 00-4p, the ALJ is required to identify and resolve conflicts between the VE and the Dictionary of Occupational Titles (the "DOT"). Pl.'s Br. 26. Plaintiff contends that there is a conflict between the VE's testimony and the DOT because, according to Plaintiff, the DOT job descriptions for Order Clerk, DOT No. 209.567-014, Charge Account Clerk, 205.367-014, and (3) Surveillance Monitor, DOT No. 379.367-010 "require at least occasional use of the hands and do not contemplate the jobs being performed with one hand." Pl.'s Br. 27. Plaintiff does not specify what those job descriptions are in his brief; instead, he simply argues that these jobs all have job

descriptions requiring the use of both hands, while the VE testified that someone with the use of only one hand could perform this job. Plaintiff argues this is legally erroneous.

The Commissioner disagrees. The Commissioner argues that at the hearing, the VE adequately explained that her opinion was based on the fact that individuals with one arm could perform the specific sedentary positions identified, and that she had previously worked with one-handed people. Def.'s Br. 11. This explanation, the Commissioner argues, constitutes substantial evidence upon which the ALJ could rely at Step Five.

Upon review of the record, specifically the hearing testimony in this case, the undersigned finds that the ALJ's analysis as reflected in his decision complies with SSR 00-4p and SSR 96-9p. In his decision, the ALJ stated, "[p]ursuant to SR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." Tr. 24. The corresponding job descriptions for these three jobs within the DOT do not include a requirement that order clerk, charge account clerk, or surveillance monitor be performed with two hands. The job description for Charge Account Clerk consists mainly of interviewing and explaining information to customers. *See* DOT No. 205.367-014. The description for Order Clerk includes taking food and beverage orders over a phone or intercom system, assisting customers in menu items, and collecting payment. *See* DOT No. 209-567-014. Finally, the description for Surveillance Systems Monitor consists of monitoring premises, using closed circuit television monitors, and adjusting monitor controls. *See* DOT No. 379.367-010. Indeed, even were these jobs to require more manual dexterity, as indicated in this court's previous decision, several cases hold that there is no conflict with the DOT where a claimant has use of only one arm where the use of two arms is not required within the DOT job description. Tr. 544; *see*

*generally Butler v. Astrue*, No. 5:11CV150, 2013 WL 352677, at *3 (W.D. Va. Jan. 29, 2013) (explaining the definitions of the jobs in question did not require frequent reaching with both arms).

Here, the ALJ correctly solicited testimony from the VE which limited the hypothetical individual to the use of his left upper extremity. Further, there is no apparent conflict between the VE's testimony and the DOT.[8] Accordingly, this court does not find a legal error in the ALJ's reliance upon this testimony to determine that Plaintiff's upper extremity limitation would not otherwise preclude him from the jobs identified by the VE.

### b. Plaintiff's Allegations of Pain and Mental Impairments

Plaintiff also argues that the ALJ's RFC did not accommodate for Plaintiff's pain or mental impairments. This argument is two-fold. First, as to Plaintiff's subjective complaints of pain, Plaintiff argues that he complained about experiencing back, neck, and shoulder pain consistently. Pl's Br. 23. These subjective complaints, Plaintiff argues, were reflected throughout his medical records and at the hearing, as cited to in his brief. Pl.'s Br. 24-25. Plaintiff also argues that the consultative examination by Dr. Cherilyn Taylor also supports Plaintiff's allegations of back pain. Plaintiff argues that at numerous points throughout the record, he also complained of chronic dislocation of his right shoulder, which caused him pain, as well as pain associated with his left knee. *Id.* Plaintiff argues that this pain interfered with his inability to concentrate and maintain pace, as well as resulted in a need to move around/shift position, which would cause him to be off task more than an ordinary break would allow. Pl.'s Br. 25. Further, Plaintiff argues that, as to his mental impairments, he received treatment for depression, and that Dr. Taylor noted his mood

---

[8] Plaintiff argues that this is "precisely the type of vocational expert testimony that was addressed" in *Biestek v. Commissioner of Social Security*, 139 S. Ct. 1148 (2019). However, this court finds *Biestek* to be an inapposite comparison in that *Biestek* considered whether a categorical rule should apply where a vocational expert refused to provide the data upon which the VE used to support her testimony.

dysfunction would make it difficult for him to work. *Id.* Plaintiff argues that both his mental impairments, as well as Plaintiff's complaints of pain, were not accounted for within the RFC.

The Commissioner responds that the ALJ appropriately considered Plaintiff's subjective complaints and found that the record did not support the extent of pain asserted by Plaintiff. Def.'s Br. 14. As to his complaints of pain after the January 2018 motor vehicle accident, the Commissioner argues Plaintiff's medical records do not reflect Plaintiff experienced high levels of pain. Def.'s Br. 15. Finally, the Commissioner argues that the RFC does adequately account for Plaintiff's claims of pain by providing limitations expressly disallowing kneeling, crouching, crawling, or climbing. *Id.*

With respect to Plaintiff's mental limitations, the Commissioner argues that the ALJ adequately discussed the impact of Plaintiff's mental impairments and argues that Plaintiff's activities of daily living, coupled with his failure to seek treatment by a mental health professional undercuts his argument that these impairments should be found to be disabling. Def.'s Br. 16. While Plaintiff's argument blends both mental impairments and allegations of pain, the analysis is distinct.

This court will first consider whether the ALJ's RFC determination adequately accounts for Plaintiff's subjective complaints of pain. As an initial matter, the RFC in this most recent ALJ decision is nearly identical to the RFC in the 2015 decision. As it relates to Plaintiff's arguments regarding subjective complaints of pain and the resulting impact on the RFC, this court notes that since the time of the previous decision, Plaintiff has complained of an increase in pain, particularly knee pain. SSR 16-3p, which superseded SSR 96-7p, provides a two-step process for evaluating an individual's symptoms. First, the ALJ must determine whether the individual has a medically determinable impairment "that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p, 2017 WL 5180304, at *3. In the second step, the ALJ must "evaluate the

intensity and persistence of an individual's symptoms such as pain and determine the extent to

which an individual's symptoms limit his or her ability to perform work-related activities . . . ."

*Id.* at *4. "In considering the intensity, persistence, and limiting effects of an individual's

symptoms, we examine the entire case record, including the objective medical evidence; an

individual's statements about the intensity, persistence, and limiting effects of symptoms;

statements and other information provided by medical sources and other persons; and any other

relevant evidence in the individual's case record." *Id; see also* 20 C.F.R. § 404.1529(a); §

416.929(a).

Here, the ALJ outlined the two-step process identified above in his decision and considered

Plaintiff's testimony at the hearing regarding his car accident and neck surgery, as well as

complaints of the inability to use his right-arm and neck and back pain. After describing Plaintiff's

complaints as testified to at the administrative hearing the ALJ determined:

> [t]he longitudinal medical evidence does not support the degree of impairment
> alleged or the presence of disabling mental or physical impairments. While the
> claimant has a diagnosed condition that could cause limitations, the medical
> findings are not consistent with the degree of limitation alleged.

Tr. 420.

In support of this determination, the ALJ considered both Plaintiff's physical impairments

and his subjective complaints of pain at the same time. The ALJ initially found that Plaintiff's

brachial plexus injury to the right upper extremity was a severe impairment. In discussing this

impairment, the ALJ provides:

> [t]he medical evidence of record demonstrates that the claimant has had intermittent
> pain as a result of his brachial plexus injury. Therefore, the undersigned finds that
> the claimant's intermittent pain has been considered and accommodated in the
> above stated residual functional capacity, as the claimant is precluded from all very
> heavy, heavy, medium and light work in the national economy. Moreover the
> claimant is unable to use the right upper extremity."

Tr. 421. While these functional limitations clearly take into account Plaintiff's inability to use his right arm, it is less clear whether the ALJ considered the alleged persistent nature and intensity of the pain associated with the physical limitation, in addition to limitations corresponding to the physical impairment itself. For example, the ALJ did not otherwise consider whether Plaintiff's complaints of pain should result in Plaintiff being off task for any extended period of time or needing to take breaks.

Similarly, in discussing Plaintiff's degenerative disc disease of both the cervical and lumbar spine, the ALJ pointed to diagnostic imaging such as X-rays and an MRI to consider the degree of physical limitations present. At the same time, the ALJ notes that Dr. John Tomarchio stated Plaintiff's pain was worse with standing or walking and better after lying down. Dr. Tomarchio diagnosed Plaintiff with lumbago and scoliosis. The ALJ separately discussed the medical records associated with the motor vehicle accident and pointed out that Plaintiff rated his pain at a zero or "no neck pain" after the accident. The ALJ then determined that, "the claimant's neck and back impairments have been considered and accommodated in the above stated residual functional capacity, as the claimant is limited to only sedentary work in the national economy. Additionally, the claimant is unable to kneel, crouch or crawl." Tr. 422. Finally, as to his left knee impairment, the ALJ acknowledged that Plaintiff complained of left knee pain for several months, and a treating physician diagnosed Plaintiff as having "left knee patellar maltracking." *Id.* The ALJ indicated that Plaintiff's left knee impairment was considered and accommodated for by limiting his ability to climb ladders, ropes or scaffolds. He did not specifically address what limiting effect, in any, Plaintiff's knee pain might have on his ability to work, and or the persistent or intense nature of this pain. While the ALJ determined that he accounted for these limitations by restricting

Plaintiff's RFC to the inability to climb ladders, ropes or scaffolds, this limitation was also in the previous RFC, prior to Plaintiff complaining of knee pain and/or it having been determined that one of Plaintiff's severe impairments is degenerative joint disease of the knee, an impairment that was not included in the prior decision. *See* Tr. 13.

> Finally, at the end of the decision, the ALJ determined that:
>
> When evaluated, the claimant's subjective complaints are found to be somewhat inconsistent with the other evidence, including the clinical and objective findings of record: and would not be a sound basis for a finding of disability. In conclusion, the claimant's alleged disabling limitations are inconsistent with the treatment history and by the conservative nature of the care provided.

Tr. 423. However, other than the records related to the motor vehicle accident earlier in his decision, the ALJ does not explain what findings or evidence was inconsistent with Plaintiff's subjective complaints of pain. In reviewing the overall record, and after considering Plaintiff's arguments regarding the evidence in the medical records, the court finds that Plaintiff consistently complained of pain, either in his lower back, his arm, or his knee.

In reviewing the examples cited by Plaintiff in his brief the records show, for example, that on March 13, 2013, a medical provider noted he presented with "severe back pain." Tr. 372. Those same notes reflect that, upon examination, he had "obvious curvature to the spine." Tr. 374. On December 5, 2014, he presented to Eau Claire Adult and Internal Medicine for a follow up for complaints of lower back pain. Tr. 403. On December 12, 2017, he presented to Palmetto Health USC Orthopedic Center with complaints of left knee pain, low back pain, and restricted range of movement. Tr. 727-728. An X-ray showed a slight lateral patellar tilt and physical therapy was recommended. Tr. 728. As to complaints about his right shoulder, records indicate as far as back as 2011 that he has "obvious deformation of the right shoulder" and an X-ray showed a fracture dislocation of his right proximal humerus Tr. 326. He was not considered a good candidate for

surgery to his right shoulder. Tr. 327. A medical record dated April 14, 2014, indicated that Plaintiff's inability to use his right arm also resulted in atrophy of his shoulder. Tr. 383. Plaintiff further points to the consultative examination of Dr. Taylor, a licensed psychologist, dated July 6, 2013. In reviewing that examination, Dr. Taylor notes that Plaintiff "appeared to walk with a slight stoop," and Plaintiff relayed to her he had back problems that "prevents him from sitting or standing for prolonged periods." Tr. 379. Dr. Taylor noted that during the examination, Plaintiff frequently arose from his chair to alleviate discomfort from the prolonged period of sitting. Tr. 381. However, despite medical records reflecting Plaintiff's allegations of pain, as well as the evidence at the hearing testimony, the ALJ rather succinctly accounts for Plaintiff's subjective complaints by limiting him to sedentary work. The ALJ does not explain what clinical or objective findings of record are inconsistent with his allegations of pain. This, in turn, frustrates meaningful review.

Instead, the decision reflects that the ALJ accommodated for Plaintiff's subjective complaints by limiting the Plaintiff to sedentary work. Sedentary work is defined as follows:

> lifting no more than 10 pounds at a time and occasionally carrying articles such as docket files, etc. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is necessary in carrying out job duties, and jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a); 404.967(a). The Fourth Circuit has previously acknowledged that the DOT provides that sedentary work "implies a capacity *to sit for at least 6 hours in an 8-hour day* and to lift up to 10 pounds maximum. The ability to walk and stand up to approximately one-third of the workday (2-3 hours per day per 8-hour day) is also implied in sedentary work." *Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir. 1984) (emphasis in original). While the ALJ opined that limiting Plaintiff to sedentary work with additional functional limitations appropriately accounted

for his pain, as well as his physical impairments, the decision does not include an explanation of the consistency, persistence, and pace of Plaintiff's pain. Nor does the ALJ reconcile the fact that at least one physician noted that Plaintiff reported his pain was worse while standing or walking and better when lying down. Moreover, at the hearing, the ALJ noticed that Plaintiff was "sort of leaning back in the chair," and that Plaintiff had his "legs straight out." Tr. 495. The ALJ asked Plaintiff if he found it difficult to sit in a normal, up right sitting position. *Id.* Plaintiff responded in the affirmative, and further stated that he had to switch positions if standing too long or sitting too long. *Id.* The ALJ also asked the VE what jobs would be available for the proposed hypothetical person with the RFC he assigned to Plaintiff, where the individual would be off task for 20% of the workday. Tr. 501-02. The VE's response was that, based on her personal experience, there would not be any jobs available. Tr. 502. If Plaintiff's allegations that he is unable to stay in a position too long are supported by the record, it therefore calls into question Plaintiff's ability to perform sedentary work, even with the limitations provided. Without a thorough explanation as to why Plaintiff's complaints of pain are not as persistent or intense as alleged, it is difficult for the reviewing court to determine whether they were considered, especially when the ALJ analyzed both the physical limitations and the pain associated with it at the same time.

Similarly, Plaintiff argues that the ALJ did not appropriately account for his mental impairments. In assessing the severity of Plaintiff's mental impairments, the ALJ determined that Plaintiff had a mild limitation when it came to remembering and applying information; a mild limitation when it came to interacting with others; a mild limitation when it came to concentration, persistence and maintaining pace; and a mild limitation in adapting or managing oneself. Tr. 418. As support for this determination, the ALJ heavily relied upon Dr. Taylor's examination and notes for each of the four broad areas of mental functioning. Tr. 418-419. However, while the ALJ cited

to Dr. Taylor's report repeatedly to support these findings, the ALJ does not otherwise indicate why he did not consider Dr. Taylor's mood disorder diagnosis or the fact that she opined he would have difficulty performing work-related functions in light of his mood dysfunction. In fact, after heavily citing to Dr. Taylor's examination, the ALJ gave "little weight" to the opinions of Dr. Taylor, finding that the medical evidence of record does not show "mental severe impairments." Tr. 419. As support for this assertion, the ALJ explained that Plaintiff had not been seen by a mental professional, such as a psychologist or psychiatrist, and he had not been hospitalized in a psychiatric facility. Tr. 419.

In his decision, the ALJ must build a "logical bridge" from the evidence to his or her conclusion. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016). The ALJ must consider all of Plaintiff's physical and mental impairments to determine how they affect his ability to work. *Id.* at 188. To be disabling, an impairment or combination of impairments must be so functionally limiting as to preclude any substantial gainful activity for twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a); 416.905(a). Within the RFC assessment, the ALJ is required to include a "discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p. The RFC must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts such as laboratory findings and non-medical evidence like daily activities and observations. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2016).

In reviewing the ALJ's decision, the court does not find an adequate link between the evidence in the record and the determination that Plaintiff's mental impairments are non-severe, particularly given that the ALJ exclusively relied upon Dr. Taylor's examination to assess the four

broad areas of mental functioning before succinctly providing little weight to her opinion and stating the medical evidence does not support her findings. The court acknowledges that the ALJ is not required to discuss every piece of evidence in the record. *See, e.g., Phillips v. Barnhart*, 91 F. App'x 775, 780, n.7 (3d Cir. 2004). Still, there must be adequate rationale for a court to review. While the ALJ indicates that Plaintiff was not treated by a mental health professional or otherwise hospitalized, Plaintiff testified at the hearing that he does not have health insurance. Further, medical records indicate that Plaintiff complained of being depressed and was prescribed Zoloft for depression by Dr. Tomarchio. Tr. 403. The Commissioner argues that Plaintiff was reportedly able to do basic activities of daily living; however, the ALJ did not cite that as a reason for finding his mental impairments are nonsevere, or as a reason for discounting Dr. Taylor's assessment after relying so heavily on her findings to consider the four broad areas of mental functioning. While other evidence may suggest that his mental impairments were not as disabling as Plaintiff alleged, the ALJ does not provide an adequate discussion to support his analysis that provides this court the ability to determine his decision is supported by substantial evidence. Therefore, after a review of the record as a whole, and for the reasons described above, the court does not find that the ALJ's assessment of Plaintiff's allegations of pain and his mental impairments in formulating the RFC to be supported by substantial evidence.

2. The ALJ's Assessment of Opinion Evidence

Finally, Plaintiff argues that the ALJ did not properly consider opinion evidence in the record. Plaintiff argues that the ALJ improperly dismissed Nurse Lecuyer's status as a registered nurse and did not consider a second opinion by Nurse Lecuyer, where she opined Plaintiff was unable to work due to his depression and his dysfunctional arm. Pl.'s Br. 30. Plaintiff also argues that the ALJ did not consider the opinion of Dr. Taylor, which he argues lends support to the

opinion of Nurse Lecuyer. *Id.* The Commissioner argues that the ALJ adequately considered Nurse

Lecuyer's opinion but does not otherwise specifically address Dr. Taylor's opinion.

Social Security regulations require that medical opinions in a case be considered together

with the rest of the relevant evidence. 20 C.F.R. § 404.1527(b); 416.927(b). "Medical opinions are

statements from acceptable medical sources that reflect judgments about the nature and severity

of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis,

what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental

restrictions." 20 C.F.R. § 404.1527(a)(1); 20 C.F.R. § 416.927(a)(1). Opinions from any medical

source on issues reserved for the Commissioner should not be ignored. SSR 96-5p, 1996 WL

374183, at *2 (July 2, 1996).

Generally, the opinions of treating physicians are entitled to greater weight than other

evidence and the regulations have enumerated particular factors for ALJs to consider when

evaluating those opinions. *See* 20 C.F.R. § 404.1527(c); 20 C.F.R. § 416.927(c). If a treating

source's medical opinion is "well-supported and not inconsistent with the other substantial

evidence in the case record, it must be given controlling weight[.]" SSR 96–2p; *see also* 20 C.F.R.

§ 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2) (providing treating source's opinion will be given

controlling weight if well-supported by medically acceptable clinical and laboratory diagnostic

techniques and not inconsistent with other substantial evidence in the record). However, "the rule

does not require that the testimony be given controlling weight." *Hunter v. Sullivan,* 993 F.2d 31,

35 (4th Cir. 1992) (per curium); *see also Craig v. Chater,* 76 F.3d 585, 590 (4th Cir. 1996) (finding

a physician's opinion should be accorded "significantly less weight" if it is not supported by the

clinical evidence or if it is inconsistent with other substantial evidence). The ALJ has the discretion

to give less weight to the opinion of a treating physician when there is "persuasive contrary evidence." *Mastro v. Apfel,* 270 F.3d 171, 176 (4th Cir. 2001).

In reviewing the ALJ's decision, the ALJ gave little weight to Nurse Lecuyer's opinion because she was not an acceptable medical source, her office notes contradict her disabling opinion, and she is not a specialist in brachial plexus injuries. Tr. 423.[9] In considering this opinion, the ALJ cited to Plaintiff's testimony at the hearing where he indicated Ms. Lecuyer was not supervised by a physician. In reviewing the hearing transcript, it is unclear whether Plaintiff was in fact thinking of Nurse Lecuyer, as later testimony at the hearing indicates that he may have been referring to a Dr. Nikki Keisler. Tr. 487. At the hearing, Plaintiff stated he "started going to her" referring to Dr. Keisler, while he later testified that "the nurse" was the only person he saw [at Eau Claire Medical]. Tr. 486-488. Nonetheless, assuming Plaintiff continued care with Nurse Lecuyer, the ALJ did consider her opinion and explained why he gave it little weight. Plaintiff argues that the ALJ did not consider the second opinion of Nurse Lecuyer, which is one sentence in the medical record that states "unable to work at all due to depression and arm dysfunction at all." Tr. 389. The ALJ considered the fact that Nurse Lecuyer was not a specialist dealing with brachial plexus injuries. Therefore, to the extent this is considered a medical opinion and not simply a notation in the record, the ALJ considers this opinion in the decision. However, the ALJ's determination that Dr. Taylor's opinion should be afforded little weight is not supported by substantial evidence of the record, as previously discussed. Dr. Taylor, who performed a consultative exam, opined that Plaintiff would experience difficulty performing work-related

---

[9] While Plaintiff's claims were initially filed prior to a change in the rules regarding the evaluation of medical evidence, for claims filed after March 27, 2017, the Social Security regulations changed to include an advanced nurse practitioner ("APRN"), like Nurse Lecuyer, in the category of acceptable medical sources. *See* 82 FR 5844-01, 2017 WL 168819 (Jan 18, 2017).

functions in light of both his mood dysfunction and his physical limitations he described. Tr. 382. Dr. Taylor also noted that it did not appear Mr. Lawton attempted to embellish or malinger with respect to his psychological deficits. Tr. 381. She diagnosed him with a mood disorder. Tr. 381. Here, after heavily relying on her examination, the ALJ found her opinion to be of little weight because the "medical evidence of record as a whole does not show mental severe impairments." Tr. 419. However, as previously considered by this court, medical records support Plaintiff's allegations that he complained of bouts of depression and was prescribed Zoloft by Dr. Tomarchio. Accordingly, this court is does not find that substantial evidence supports the weight given to Dr. Taylor's examination, given the fact that the ALJ also cited to her examination exclusively in considering Plaintiff's mental functioning. Because this court is remanding this case to reconsider Plaintiff's subjective complaints of pain, as well as his mental impairments, this court instructs the Commissioner to re-evaluate the assessment of Dr. Taylor, as well.

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds remand is warranted. Based on the foregoing, the court hereby reverses the decision of the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) and remands the matter to the Commissioner for further proceedings consistent with this order.

In light of the pendency of this application for disability benefits for over nine years, the agency is directed to conduct an administrative hearing on remand and to issue a decision by the Administrative Law Judge within 90 days and a final agency decision within 120 days. *Lawer v. Berryhill*, No. CV 0:16-3739-RMG, 2017 WL 5125517, at *1 (D.S.C. Nov. 1, 2017) (remanding with deadline for final agency decision on claim pending over four years).

IT IS SO ORDERED.

March 11, 2022                                    Kaymani D. West
Florence, South Carolina                         United States Magistrate Judge